THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CIVIL CASE NO.:

JUAN CRUZ,

       Plaintiff,

v.

BOSTON SCIENTIFIC MIAMI
CORPORATION, a Florida Corporation, and
BOSTON SCIENTIFIC CORPORATION, a
Foreign Corporation,

       Defendants.

_____/

**PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL**

The PLAINTIFF, JUAN CRUZ (hereinafter referred to as "PLAINTIFF" or "CRUZ"), by and through his undersigned counsel, hereby files this Verified Complaint and Demand for Jury Trial against DEFENDANTS, BOSTON SCIENTIFIC MIAMI CORPORATION ("BSC-MIAMI") and BOSTON SCIENTIFIC CORPORATION ("BSC") (hereinafter collectively referred to as the "DEFENDANTS" or the "DEFENDANT EMPLOYERS"), and alleges as follows:

**NATURE OF THE ACTION**

1. This is an action brought to seek redress for the DEFENDANT EMPLOYERS' violation of Section 510 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §1140. Specifically, the DEFENDANT EMPLOYERS violated ERISA when they discharged and discriminated against PLAINTIFF for the purpose of interfering with

1

his attainment of a Retention Bonus to which he would have become entitled under DEFENDANTS' Global Operations Retention Plan, an employee welfare plan within the meaning of ERISA.  This is also an action to seek redress for DEFENDANT EMPLOYERS' violation of the Florida Civil Rights Act of 1992 ("FCRA"), Florida Statutes § 760.01, *et seq.*  Specifically, DEFENDANT EMPLOYERS violated the FCRA when they subjected PLAINTIFF to unlawful disparate treatment and discharge based on his national origin, Hispanic.  In this action, PLAINTIFF seeks appropriate relief for damages suffered by PLAINTIFF as a result of the DEFENDANTS' violations of ERISA and the FCRA.

## JURISDICTION AND VENUE

2. Jurisdiction is proper in this Court pursuant to 28 U.S.C. §1331.  PLAINTIFF CRUZ is bringing this action under Section 510 of ERISA, a law of the United States, thereby raising a federal question over which this Court possesses original jurisdiction.

3. This Court also possesses supplemental jurisdiction pursuant to 28 U.S.C. §1367(a) over PLAINTIFF CRUZ's claim brought under the FCRA as that claim is so related to the ERISA claim in this Action that they form part of the same case or controversy.

4. This Court has jurisdiction to order injunctive relief, as well as front pay, lost wages, benefits, and other lost remuneration, all contractual relief, all other compensatory and punitive damages available and payment of reasonable attorneys' fees and taxable costs and expenses incurred in bringing this action.

5. The acts and omissions that give rise to this action occurred in Dade County Florida. Venue is therefore proper in the Miami Division of the Southern District of Florida.

**PARTIES**

6. Plaintiff CRUZ is a citizen of the United States and a resident of Palm Beach County, Florida. He was employed by the DEFNDANT EMPLOYERS in Dade County, Florida from approximately August of 2008 through to his termination on or about September 27, 2011.

7. At all times relevant to this action, CRUZ was a participant or beneficiary of the DEFENDANT EMPLOYERS' Global Operations Retention Plan, an employee welfare plan within the meaning of ERISA.

8. At all times relevant to this action, CRUZ was an employee of the DEFENDANT EMPLOYERS within the meaning of the FCRA.

9. At the time of the unlawful acts alleged herein, BSC-Miami was a Florida Corporation doing business in Dade County, Florida. As of the date of the filing of this COMPLAINT, BSC-Miami is registered with the Florida Department of State, Division of Corporations, as an active Florida corporation. During the calendar year of the unlawful acts alleged herein, 2011, and during the preceding calendar year, 2010, BSC-Miami employed over 15 individuals for twenty or more consecutive weeks and was engaged in an industry affecting interstate commerce. As such, BSC-Miami was an "employer" within the meaning of the FCRA.

10. At the time of the unlawful acts alleged herein, BSC was a Delaware Corporation doing business in Dade County, Florida. BSC was the designated Plan Administrator for the DEFENDANT EMPLOYERS' Global Operations Retention Plan at issue in this action.

11. At all times relevant to this action BSC employed over 15 individuals and was engaged in an industry affecting interstate commerce. As such BSC was an "employer" within the meaning of the FCRA.

12. At all times relevant to this action BSC-Miami and BSC constituted a "single employer" or an "integrated enterprise" for purposes of liability under ERISA and the FCRA as they had interrelation of operations, centralized control of labor relations, common ownership and financial control and common management officers and directors.

13. During PLAINTIFF's employment with the DEFENDANT EMPLOYERS, and at the time of the unlawful acts alleged herein, BSC-Miami and BSC had interrelated operations. BSC operated a centralized website through which the operations of all of its subsidiaries, including BSC-Miami, were controlled. Corporate forms used to conduct regular business activity were contained on the centralized website and were uniform nationwide, including at BSC-Miami. To the best of the PLAINTIFF'S knowledge PLAINTIFF's BSC-Miami travel-related documents had to be approved by BSC. According to annual reports filed by both DEFENDANT EMPLOYERS from 2011 through April of 2013 with the Florida Secretary of State, BSC-Miami and BSC share the same corporate mailing address and the same Registered Agent. BSC-Miami maintained an office for officials from BSC who regularly visited BSC-Miami to oversee its

operations. The decision to relocate the operations of BSC-Miami to Costa Rica was made by BSC and a BSC official was in charge of overseeing the relocation team. That official was given an office space at BSC-Miami's location in Miami, Florida.

14. During PLAINTIFF's employment with the DEFENDANT EMPLOYERS, and at the time of the unlawful acts described herein, BSC exercised centralized control of the labor relations at BSC-Miami. BSC maintained a uniform Employee Handbook for employees of all of its subsidiaries, including BSC-Miami, on its centralized website. There were postings throughout the BSC-Miami facility advising employees to contact BSC directly with any personnel issues they were uncomfortable raising with BSC-Miami. PLAINTIFF was instructed that any changes in his personnel information he wished to make had to be made through a BSC 1-800 number. PLAINTIFF was instructed that he had to call BSC in Massachusetts to make any modifications in his employee benefits, including his health and life insurance benefits. BSC was the designated Plan Administrator for the DEFENDANT EMPLOYERS' Global Operations Retention Plan at issue in this action which was offered to BSC-Miami employees including PLAINTIFF.

15. During PLAINTIFF's employment, and at the time of the unlawful acts described herein, BSC-Miami and BSC shared common ownership and BSC exercised financial control over both entities. BSC-Miami is a wholly owned subsidiary of BSC. BSC had to approve certain financial expenditures by BSC-Miami and BSC made the ultimate financial decision to move the operations of BSC-Miami from Miami, Florida to Costa Rica.

16. During PLAINTIFF's employment, and at the time of the unlawful acts described herein, BSC-Miami and BSC shared common management, officers and directors. Annual reports filed by BSC-Miami and BSC with the Secretary of State of Florida from 2011 through to April of 2013 show that the DEFENDANT EMPLOYERS shared common officers and directors including Michael Mahoney, Jeffrey Capello, Daniel Brennan and Douglas Cronin. The annual reports for both entities were signed by the same VP of Taxes, Douglas J. Cronin. The Director of BSC-Miami reported to Officials at BSC in Massachusetts and there were frequent visits from officials of BSC to BSC-Miami. BSC officials were in charge of overseeing the BSC-Miami move to Costa Rica. While on the transfer team, PLAINTIFF's supervisor reported to a BSC official.

## ALL CONDITIONS PRECEDENT HAVE BEEN MET

17. PLAINTIFF CRUZ timely filed a charge alleging national origin discrimination regarding the suspension and termination described herein with the Florida Commission on Human Relations on or about October 31, 2011. *See, Exhibit A, Charge of Discrimination.* Over 180 days passed from that filing date without the FCHR issuing any finding with respect to PLAINTIFF CRUZ's charge. As such, PLAINTIFF CRUZ has met all conditions precedent to bringing an action for national origin discrimination with respect to his suspension and discharge under the FCRA.

## FACTUAL ALLEGATIONS

18. PLAINTIFF CRUZ is Hispanic.

6

19. PLAINTIFF CRUZ was initially employed by the DEFENDANT EMPLOYERS as a Line Maintenance Technician II in August of 2008.

20. PLAINTIFF CRUZ was qualified for his position and consistently received favorable performance reviews and corresponding pay increases during his employment with the DEFENDANT EMPLOYERS.  After approximately one year he was promoted to the position of Engineering Technician III.

21. The DEFENDANT EMPLOYERS further acknowledged PLAINTIFF CRUZ's excellent work performance and the value of his skills in late 2009 when the DEFENDANT EMPLOYERS selected him to assist in transitioning its Miami operations to Costa Rica.

22. In or about October of 2009, BSC-Miami's Director of Engineering gave PLAINTIFF CRUZ a letter advising him that, as part of the DEFENDANT EMPLOYERS' operational realignment activities, PLAINTIFF CRUZ's position in Miami was going to be eliminated.

23. However, as a result of his proven work performance, the DEFENDANT EMPLOYERS asked PLAINTIFF CRUZ to be part of the team needed to transition their operations from Miami to Costa Rica.

24. As an inducement to keep PLAINTIFF CRUZ employed to assist with the transition, DEFNDANT EMPLOYERS offered him the opportunity to participate in the BSC Global Operations Retention Plan (the "Plan").

25. The Plan offered a retention bonus to selected employees who stayed to assist with the transition.  DEFENDANT EMPLOYERS represented to PLAINTIFF CRUZ that the Plan was an employee welfare plan within the meaning of ERISA and was

7

governed by that statute. BSC is expressly identified in the Plan as the Plan Administrator.

26. At the time the DEFENDANT EMPLOYERS' Director of Engineering presented PLAINTIFF CRUZ with the offer letter, he recommended to CRUZ that CRUZ stay on with the DEFENDANT EMPLOYERS instead of looking for other employment because the retention bonus offered in the Plan was "good money."

27. PLAINTIFF CRUZ relied on the recommendation of his supervisor and DEFENDANT EMPLOYERS' promise of a Retention Bonus when he decided to forego seeking any other employment opportunities in order to assist DEFENDANT EMPLOYERS with the transition of BSC-Miami's operations to Costa Rica over the next two years.

28. From the time PLAINTIFF CRUZ was offered participation in the Plan in October of 2009 through to September of 2011 he fulfilled all of his obligations under the Plan. He dedicated his time and effort to assisting the DEFENDANT EMPLOYERS effect their transition instead of seeking employment that he would eventually need.

29. PLAINTIFF CRUZ's duties in the transition required him to travel round trip to and from Costa Rica almost every week. There were some weeks where he was required to make two round trips in a week due to the needs of the DEFENDANT EMPLOYERS' Miami office. His transition assignment work not only prevented him from planning for his own future career, but also required significant personal sacrifices. Those sacrifices included him being away from his home and family for long periods of time, including during the time that his wife was pregnant with the couple's first child.

30. At no time from October of 2009 up until late September of 2011 did DEFENDANT EMPLOYERS express any concerns or doubts regarding PLAINTIFF CRUZ's integrity, trustworthiness or work performance. To the contrary, the DEFENDANT EMPLOYERS consistently expressed their satisfaction with his performance during this period and their gratitude for the sacrifices he was making to help with the transition.

31. Despite the extraordinary efforts PLAINTIFF CRUZ made for almost two years, the DEFENDANT EMPLOYERS ultimately took an eleventh-hour action to wrongfully deny him the Retention Bonus he was promised.

32. The Plan's official Effective Date was October 1, 2009. The date of the letter offering participation in the Plan to PLAINTIFF CRUZ was October 15, 2009. The Retention Calculation Period was the earlier of the date of PLAINTIFF CRUZ's ultimate layoff, or two years from the date of the Notice, i.e. on or about October 15, 2011.

33. Through to mid-September of 2011 PLAINTIFF CRUZ was meeting all requirements to successfully complete the two-year Retention Calculation Period.

34. However, on or about September 19, 2011, less than one month prior to the end of the Retention Calculation Period and shortly before the transitional work would have been completed and he would have been laid off, DEFENDANT EMPLOYERS suspended PLAINTIFF CRUZ's employment under the guise of a mistake he had made regarding a work order.

35. On or about September 27, 2011, less than three weeks from the expiration of the two-year Retention Calculation Period, DEFENDANT EMPLOYERS terminated

PLAINTIFF CRUZ under the guise of that same mistake, thus denying him the Retention Bonus he had worked toward for the past two years.

36. The reason given to terminate PLAINTIFF CRUZ just before the end of the Retention Calculation Period was a pretext for denying him the retention bonus promised to him.

37. PLAINTIFF CRUZ had never experienced any serious criticism from the DEFENDANT EMPLOYERS regarding his work performance or his integrity. Moreover, his abrupt termination did not comport with the DEFENDANT EMPLOYERS' own progressive discipline policy. In addition, PLAINTIFF CRUZ was aware of at least one other employee who had made similar or more serious mistakes than the one cited for his termination, but who was not disciplined so severely and abruptly.

38. PLAINTIFF CRUZ is aware of at least one similarly situated non-Hispanic employee who committed a similar, or more serious, mistake that the one cited by DEFENDANT EMPLOYERS for CRUZ's termination. That employee was given a brief suspension, but not terminated. That employee was also subsequently promoted after his suspension.

39. At the time of his termination, PLAINTIFF CRUZ told the DEFENDANT EMPLOYERS that he wanted the Retention Bonus he had been promised and that he had worked for over the past two years. DEFENDANT EMPLOYERS responded stating, "That is not going to happen." DEFENDANT EMPLOYERS' acts of discharging and discriminating against PLAINTIFF CRUZ just prior to meeting the requirements of the "Plan" and then expressly telling him that his receipt of the Retention Bonus was "not going to happen" prevented PLAINTIFF CRUZ from claiming his Retention Bonus

pursuant to the Plan and rendered any such claim for the Retention Bonus pursuant to the Plan's claims process a futile gesture.

40. DEFENDANT EMPLOYERS never paid PLAINTIFF CRUZ the retention bonus promised to him.

41. DEFENDANT EMPLOYERS actions in suspending and terminating PLAINTIFF CRUZ were done with malice and a reckless disregard for his rights.

## COUNT I

### (VIOLATION OF SECTION 510 OF ERISA, 29 U.S.C. §1140)

42. PLAINTIFF CRUZ realleges Paragraphs 1 through 41 above.

43. PLAINTIFF CRUZ belonged to a protected group, meaning that he was entitled to protection from discrimination under ERISA as he was a participant, or beneficiary, of an employee welfare plan within the meaning of ERISA.  The Plan states that a participant in the plan may not be discharged or discriminated against to prevent a participant from obtaining a benefit or exercising their ERISA rights.

44. PLAINTIFF CRUZ was qualified for his position.  From the commencement of his employment in 2008 through to his wrongful suspension and discharge he received favorable performance reviews, commensurate pay raises and a promotion.  He was selected to be part of the transition team and participate in the Plan because DEFENDANT EMPLOYERS held his performance in high regard.

45. DEFENDANT EMPLOYERS had the specific intent to interfere with PLAINTIFF CRUZ's ERISA rights.  The circumstances under which he was suspended and discharged give rise to an inference of discrimination and intentional interference

with PLAINTIFF CRUZ's right to make a claim for and attain the Retention Bonus promised in the Plan.

46. After three years of acknowledged excellent performance and an excellent work record, DEFENDANT EMPLOYERS abruptly discharged PLAINTIFF CRUZ just weeks before he would have completed the retention bonus calculation period. Moreover, DEFENDANT EMPLOYERS discharged PLAINTIFF CRUZ in contravention to their own progressive discipline policy. In addition, at least one other similarly situated employee who committed similar acts to that DEFENDANT EMPLOYERS relied upon to discharge PLAINTIFF CRUZ was not discharged.

47. DEFENDANT EMPLOYERS had the specific intent to interfere with PLAINTIFF CRUZ's ERISA rights when they discriminated against him and discharged him to interfere with his claim for and attainment of the retention bonus he had earned.

WHEREFORE, PLAINTIFF CRUZ demands judgment against DEFENDANT EMPLOYERS for all relief provided for under law including appropriate equitable relief, the lost retention bonus, all other contractual damages available, all other compensatory damages available, attorneys' fees and costs of this action and such other relief as this Court deems just and proper.

## COUNT II

### (NATIONAL ORIGIN DISCRIMINATION IN VIOLATION OF THE FCRA, FLORIDA STATUTES, § 760.01, *et seq.* )

48. PLAINTFF CRUZ realleges Paragraphs 1 through 41 above.

49. PLAINTIFF CRUZ is of Hispanic national origin and a member of a protected group.

50. PLAINTIFF CRUZ was qualified for his position. From the commencement of his employment in 2008 through to his wrongful suspension and discharge he received favorable performance reviews, commensurate pay raises and a promotion. He was selected to be part of the transition team and participate in the Plan because DEFENDANT EMPLOYERS held his performance in high regard.

51. PLAINTIFF CRUZ was subjected to adverse employment actions when he was suspended and subsequently terminated from his position with DEFENDANT EMPLOYERS and denied the ability to make a claim for and attain the retention bonus promised to him.

52. A similarly situated non-Hispanic employee who committed a similar, or more egregious error than that relied upon by DEFENDANT EMPLOYERS to terminate PLAINTIFF CRUZ was treated more favorably when he was given a short suspension then later promoted.

53. The reasons given by DEFENDANT EMPLOYERS to PLAINTIFF CRUZ for his termination are a pretext for disparate discipline and disparate treatment based on PLAINTIFF CRUZ's national origin. DEFENDANT EMPLOYERS discharged PLAINTIFF CRUZ in contravention to their own progressive discipline policy. In addition, at least one other similarly situated non-Hispanic employee who committed similar acts to that DEFENDANT EMPLOYERS relied upon to discharge PLAINTIFF CRUZ was not discharged.

54. DEFENDANT EMPLOYERS subjected PLAINTIFF CRUZ to unlawful disparate discipline and disparate treatment based on his national origin when they

suspended him and terminated his employment in violation of the Florida Civil Rights Act, Florida Statutes, § 760.01, *et seq.*

WHEREFORE, PLAINTIFF CRUZ demands judgment against DEFENDANT EMPLOYERS for all relief provided for under law including lost wages, benefits and other remuneration, front pay in lieu of reinstatement, all other compensatory damages available, punitive damages, attorneys' fees and costs of this action and such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

PLAINTIFF CRUZ respectfully demands a trial by jury on all counts raised in this Complaint.

Date:   ____September 26, 2013_____

                              Respectfully submitted

                              ___s/ Michael J. Farrell_____
                              Michael J. Farrell, Esq.
                              FL. Bar. No.: 53228
                              FARRELL LAW, P.A.
                              1000 5th Street, #200
                              Miami Beach, FL   33139
                              Tel: (305) 965-4469
                              Fax: (305) 330-9161
                              Email: mfarrell@mjfarrelllaw.com